FILED

MAY 03 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | I N F O R M A T I O N |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:23 CR 00262 |
| ) | Title 18, United States Code, |
| SCOTT LEVINE, ) | Section 371 |
| ) | JUDGE LIOI |
| Defendant. ) | |

COUNT 1
(Conspiracy to Commit Securities Fraud, 18 U.S.C. § 371)

The First Assistant United States Attorney charges:

1. From in or around July 2019 to on or about August 18, 2020, Defendant SCOTT LEVINE ("LEVINE"), together with others known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree with each other to commit offenses against the United States, to wit:

a. To knowingly and willfully, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by: (a) employing devices, schemes and artifices to defraud; (b) making and causing to be made false statements of material fact and omitting material facts that were necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members

of the investing public and sellers and purchasers of Global Resource Energy, Inc. ("GBEN") securities, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Securities Fraud); and

b. To knowingly and willfully, by the use of the mails and any means and instrumentality of interstate commerce, and of any facility of any national securities exchange, for the purpose of creating a false and misleading appearance of active trading in any security other than a government security, and a false and misleading appearance with respect to the market for any such security, (a) entering an order and orders for the purchase of such security with the knowledge that an order and orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale of any such security, has been and will be entered by and for the same and different parties, and (b) entering any order and orders for the sale of any such security with the knowledge that an order and orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been and will be entered by and for the same and different, parties, in violation of Title 15, United States Code, Sections 78i(a)(1) and 78ff (Manipulative Securities Trading).

## OBJECTS OF THE CONSPIRACY

2. The objects of the conspiracy included, but were not limited to: (1) defrauding the investors; (2) obtaining investor monies and paying and receiving undisclosed commissions; (3) inflating the value of GBEN; and (4) enriching the conspirators.

## MANNER AND MEANS

3. It was part of the conspiracy that:

      a.    LEVINE, a resident of Florida, was a licensed securities broker and had passed Series 55, 62, 63 of the Securities Industry Essentials ("SIE") exams with the Financial Industry Regulatory Authority, Inc. ("FINRA").

      4.    LEVINE worked as a market-maker at a broker-dealer registered with the Securities and Exchange Commission ("SEC").

      5.    Global Resource Energy, Inc., ("GBEN") was a publicly traded Nevada corporation, with its principal place of business in Fort Worth, Texas. GBEN's business purportedly focused on the health and wellness, green, and lifestyle sectors, specifically the manufacturing and distribution of a ready-to-drink hemp infused cocktail called "Hemp Hazed." The company's stock traded on "Over the Counter" ("OTC") Markets under the ticker GBEN.

      6.    Thomas Collins (charged separately) controlled a substantial number of outstanding, restricted, and free-trading shares of GBEN through his family members, co-conspirators, and associates over which he had influence and control. Collins used co-conspirators and nominees to acquire outstanding shares and purchase convertible notes. Collins paid kickbacks to unlicensed stockbrokers for soliciting and selling shares of GBEN to investors.

      7.    Patrick Thomas (charged separately) controlled a substantial number of outstanding, restricted, and free-trading shares of GBEN through his personal companies, co-conspirators, family members, and associates over which he had influence and control. Thomas used co-conspirators and nominees to acquire outstanding shares and purchase convertible notes.

      8.    Brian Kingsfield (charged separately), also known as "Brian Evans," an unlicensed stockbroker, solicited investors to purchase shares in GBEN. Kingsfield received kickbacks or undisclosed commissions for the sale of both restricted and free trading shares of

3

GBEN to investors from Collins and Thomas. Kingsfield also received and paid kickbacks to other unlicensed stockbrokers for soliciting and selling shares of GBEN to investors.

9. In or around July 2020, LEVINE learned of the close familial relationship between the CEO of GBEN and Collins; and met with Collins and the GBEN CEO.

10. LEVINE was aware of the relationship between Collins, Thomas, and Kingsfield as it related to GBEN. LEVINE was aware that Collins, Thomas, and others had shares to sell in GBEN.

11. Collins, Kingsfield and others communicated, directly and indirectly, with LEVINE to alert him that "buying" or "bids" would be generated in the market for GBEN. Before his co-conspirators provided LEVINE with the specific transaction details, he would stop them and deliberately avoid his co-defendants providing him with specifics. Instead, LEVINE would respond that, as a market-maker, he has "eyes on the stock" so that his co-defendants would know that he would be looking out for the "buying" or "bids" in GBEN. LEVINE, utilizing his position as a market-maker, executed match trades by short selling GBEN shares. LEVINE then executed match trades with Collins, Thomas and others operating on their behalf to close out his short position, and he helped his co-conspirators profit from the sale of GBEN shares.

12. LEVINE received his compensation from the scheme through the spread generated between what LEVINE short sold shares to investors to and the share price that LEVINE purchased shares from his co-conspirators for to close out the position.

## OVERT ACTS

13. In furtherance of the conspiracy, and to effect the objects and conceal the existence thereof, Defendants and others performed the following overt acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

    a. On or about July 2, 2019, LEVINE executed a short sale trade at 10:04:21, for 15,000 shares of GBEN at a share price of $0.76 with Victim 1.

    b. On or about July 2, 2019, LEVINE executed a short sale trade at 10:08:07, for 50,000 shares of GBEN at a share price of $0.76 with Victim 2.

    c. On or about July 2, 2019, LEVINE executed a buy order trade to at 10:12:55, for 3,000 shares of GBEN at a share price of $0.73 with PAG Group.

    d. On or about July 2, 2019, LEVINE executed a buy order trade to at 10:13:20, for 15,000 shares of GBEN at a share price of $0.73 with PAG Group.

All in violation of Title 18, United States Code, Section 371.

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By: *[signature]*
MICHAEL L. COLLYER
Chief, White Collar Crimes Unit